458

## Levenson v. Souser

*Peter J. Neeson,* for plaintiff.
*Charles T. Roessing,* for defendant.

KEELER, *J.,* June 17, 1987—On June 2, 1983, plaintiff, Tan Levenson, commenced an action by filing a complaint against Dr. Roslyn Souser, a plastic surgeon. This cause of action arises out of services rendered to plaintiff in the form of a bilateral breast augmentation medical procedure performed by Dr. Souser on January 12, 1981. Specifically, plaintiff alleges that she was not adequately apprised of the risks and potential for complications which attended the surgical procedures provided. In addition, plaintiff also claimed that her doctor was negligent in the performance of such medical interventions.

A motion for summary judgment was filed on behalf of the doctor on the grounds that the case was time barred due to the applicable two-year statute of limitations. Plaintiff acknowledges that a complaint

was filed more than two years subsequent to the original surgical procedure; however, she contends that the "discovery rule" renders the statute of limitations inapplicable under the facts of this case.

In terms of liability, plaintiff, in her pretrial statement, identified the legal issue as "whether defendant fully informed and/or warned plaintiff of the risks and/or hazards related to the surgical procedure in question. . . ." Therefore, it appears that plaintiff only intends to pursue a cause of action under the rubric of informed consent.

In passing upon a motion for summary judgment the court must determine, as a matter of law, whether there exists any genuine issue of material fact giving due consideration to the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits presented. Pa.R.Civ.P. 1035(b). In reaching its conclusion, the court must refrain from deciding issues of fact as the existence of such issues would mandate a trial. *Washington Federal Savings and Loan v. Stein,* 357 Pa. Super. 286, 515 A.2d 980 (1986).

At this juncture, the apparent question for disposition is whether plaintiff may proceed on her cause of action related to a lack of informed consent which allowed Dr. Souser to perform surgery on January 12, 1981. There is no question but that the statute of limitations applicable to this action requires the initiation of proceedings within two years. 42 Pa.C.S. §5524(1) & (2) (1981). Ordinarily, this would require plaintiff to commence her action against defendant on or before January 12, 1983. Inasmuch as plaintiff has invoked the discovery rule, this court must determine, as a matter of law, whether plaintiff's cause is time barred or whether the statute of limitations did not begin to run until some time after plaintiff's original surgery.

Through enactment of a statute of limitations the Legislature expresses· its public policy judgment concerning how long a plaintiff may delay suit without unfairly prejudicing a defendant. *Ulakovic v. Metropolitan Life Ins. Co.*, 339 Pa. 571, 576, 16 A.2d 41, 43 (1940). Long ago, in an effort to ameliorate the harsh effects inherent in a rigid application of a limitation of action, the appellate courts carved out an exception to the statute and held that ignorance of an injury may delay the running of the statute of limitations. *Lewey v. Fricke Coke Co.*, 166 Pa. 536, 31 Atl. 261 (1895). Thereafter, the courts expanded this exception to include causes of action where plaintiff is aware of injury but not the causative agent. *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). See generally, *Groover v. Riddle Memorial Hosp.*, 357 Pa. Super. 420, 516 A.2d 53 (1986).

Defendant's motion poses an interesting question: Does the discovery rule apply in informed consent cases? The cornerstone of the informed consent doctrine precludes a physician from administering to or operating upon a mentally competent adult patient in a nonemergency context without the patient's consent. That is, the doctor must advise the patient of all hazards and alternatives which relate to the proposed procedure. *Festa v. Greenberg*, 354 Pa. Super. 346, 511 A.2d 1371 (1986); *Rogers v. Lu*, 335 Pa. Super. 595, 485 A.2d 54 (1984). Disclosure assures that the patient's informational needs are fulfilled allowing the patient to knowingly and intelligently assent to a given treatment. See *Sauro v. Shea*, 257 Pa. Super. 87, 390 A.2d 259 (1978). In the absence of informed consent the physician risks being subject to suit for tortious assault and battery. *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966). Pennsylvania's concept of a cause of action for the failure of a doctor to

procure the informed consent of his patient before performing a medical procedure relies not on principles of negligence, but rather is derived from the concept of technical assault. *Cooper v. Roberts,* 220 Pa. Super. 260, 286 A.2d 647 (1971). In light of this quirk of Pennsylvania jurisprudence, all the elements necessary to establish an informed consent case are presented when a medical procedure is performed where the physician has ignored his or her obligation to enlighten the patient as to the perils and alternatives beforehand. As soon as the doctor lays his educated hands on the patient the tort is completed and liability attaches. Unlike negligence cases where the discovery rule clearly applies, manifestation of injury or damage is not part of the prima facie case. See *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963) (under certain circumstances, surgery without consent constitutes a technical assault). Thus, the basic rationale for employing the discovery rule in negligence cases is absent here. In straight-forward negligence cases, damage, a requisite element of the cause of action, may not be apparent until long after an alleged wrongdoer has violated a duty to act in a nonnegligent fashion.

The statute of limitations contains two subsections which may be applicable in this case. In pertinent part the statute requires that:

"The following actions and proceedings must be commenced within two years:

"(1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.

"(2) An action to recover damages for injuries to the person or for the death of an individual caused by wrongful act or neglect or unlawful violence or negligence of another." Pa.C.S. §5524.

Certainly this proceeding originally sought redress under both subsections. But, in light of the abandonment of the negligence claim and the continued pursuit of damages under the informed consent doctrine, and given the court's determination that informed consent relies on technical assault theory, only the former subsection legitimately applies. Assuming for the sake of argument that both subsections applied, rules of statutory construction constrain us to rely on the more specific section rather that the more general. *Barletta v. Barletta*, 506 Pa. 404, 409, 485 A.2d 752, 754 (1984); *Rivera v. Philadelphia Theological Seminary*, 326 Pa. Super. 509, 520-21, 474 A.2d 611 (1984) modified on other grounds, 510 Pa. 1, 507 A.2d 1 (1986). See also, 1 Pa.C.S. §1933 (Cum.Supp., 1986). The finding that the statute of limitations invoked relates to the intentional tort aspect of informed consent underscores the theoretical problems which have dogged the courts for some time.

Unfortunately, the only reported case which dealt with the applicability of the discovery rule in an informed consent context failed to crystallize the issue by focusing on the technical assault/negligence dichotomy. See *Barshady v. Schlosser*, 226 Pa. Super. 260, 313 A.2d 296 (1973) (per curiam affirmance of trial court's nonsuit of plaintiff's claim based on defendant's invocation of statute of limitations — equally divided court). Moreover, as a per curiam affirmance of the trial court's decision, the Superior Court's ruling lacks precedential authority. See *Reed v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 342 Pa. Super. 517, 521-22, 493 A.2d 710, 712 (1985). We would be remiss if reference were not made to Judge Hoffman's eloquent opinion supporting reversal of the trial court's dismissal of the *Barshady* case. Judge Hoffman opined that the stat-

ute of limitations is tolled "where the existence of injury is not known and where such knowledge cannot be reasonably ascertained." *Barshady,* supra, at 263, 313 A.2d at 298. Yet, in further illuminating the issue, Judge Hoffman noted, "It must be borne in mind that this is not a case where the act of negligence was known to plaintiff, but the extent of damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations." Id. Obviously, this reference to negligence blurs the distinction between a negligence-based informed consent theory and the technical assault basis for informed consent cases espoused by our supreme court. See e.g., *Gray,* supra. Judge Hoffman's disdain for the intentional tort basis underlying informed consent cases subsequently became explicit when he concluded that the more enlightened, modern trend in such cases recognized "the doctrine as being grounded on negligence rather than battery." *Malloy v. Shanahan,* 280 Pa. Super. 440, 445, 421 A.2d 803, 805 (1980) (Hoffman, J., dissenting) (citations omitted). In spite of Judge Hoffman's stated desire to abandon the technical assault doctrinal foundation, the courts have declined to adopt the view. See *Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985). Indeed, this refusal has engendered some criticism of technical assault conceptual framework. See Comment, Informed Consent in Pennsylvania — the Need for a Negligence Standard, 28 Vill.L.Rev. 149 (1982).[1] Other than referring to Judge Hoffman's

1. Confusion abounds when the trial court faces the issue of informed consent. Does the technical assault theory render the physician liable whenever a specific risk is not identified prior to surgery? If so, in the absence of any other manifestation of injury, may damages be awarded for the pain which the patient endured as a natural consequence of the surgery? On

*Barshady* opinion, plaintiff has not directed the court's attention to any case in which the discovery rule was applied in an informed consent case.

Clearly, we are required to ignore the practical aspects of this injury and defer to jurisprudential purity and oversimplification in reaching this decision. However, this court cannot circumvent the well established principles of law with respect to informed consent cases in Pennsylvania. It is curious to note that the very case which established the technical assault principle as the underlying doctrinal foundation for informed consent cases stated:

"These courts act upon the concept that the philosophy of the law is embodied in the ancient Latin

---

the other hand, is the physician only liable where the unidentified risk materializes and victimizes the patient? See generally, *Canterbury v. Spence,* 464 F.2d 772, 790 (D.C. Cir., 1972). If so, does not this allow a doctor to avoid his responsibility to the patient to provide adequate information when serendipity intercedes and the injury sustained happens to arise from a risk previously described? These crucial inquiries, to date unresolved, take on additional import when questions of negligence arise in the same case.

Another problem associated with the technical assault informed consent theory arises in cases where a question arises as to whether the patient would have assented to a given medical procedure even if complete information had been supplied at the outset. To date, only federal courts sitting in Pennsylvania have addressed this issue. *Salis v. United States,* 522 F. Supp. 989, 1002 (M.D. Pa., 1981); *Bowers v. Garfield,* 382 F. Supp. 503, 505 (E.D. Pa.), aff'd, 503 F.2d 1398 (Third Cir., 1974). Both the *Salis* and *Bowers* courts discuss this question in terms of causation, a concept uniquely associated with negligence doctrine. Thus, the federal courts infuse informed consent cases with negligence concepts.

Should the Pennsylvania appellate courts decide to adopt a negligence paradigm in informed consent cases, these questions would be rendered moot. In turn, the potential for confusion in combined informed consent and negligence cases would be eliminated.

maxim: Ratio est legis anima; mutata legis ratione mutatur et lex.

Reason is the soul of the law; the reason of the law being changed, the law is also changed." *Gray,* supra, at 152, 223 A.2d 667. Perhaps the day has come when the reason underlying the theory of technical assault deserves scrutiny and its continued viability should be ascertained.

For the foregoing reasons, the court must grant defendant's motion for summary judgment precluding reference to the surgery of January 12, 1981, and any other procedure prior to June 2, 1981, as well as any injuries which may have resulted therefrom.