615 A.2d 1345

**Janice A. FOFLYGEN, Appellant,**

v.

**R. ZEMEL, M.D. (PC); Allegheny General Hospital, Allegheny Anesthesiology Associates, Inc., Sergio Betancourt, M.D., Kira Kislan, M.D., Douglas F. Clough, M.D., Martin McGrogan, M.D., Frederick Weniger, M.D., Lisa Lockerman, R.N., Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 1, 1991.

Filed Sept. 23, 1992.

20

Dale M. Brown, Washington, for appellant.

Mark Neff, Washington, for Allegheny Anesthesiology, appellee.

David J. Singley, Pittsburgh, for Clough, appellee.

Louis C. Long, Pittsburgh, for Allegheny General Hospital, appellee.

John A. Bass, Pittsburgh, for Betancourt, appellee.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

KELLY, Judge:

This is an appeal from a series of orders entered by the trial court granting the appellees' various preliminary objections in the nature of demurrers to the appellant's complaint. We quash in part and affirm in part.

The relevant facts and procedural history are as follows. The appellant, Janice A. Foflygen, read an article in the Pittsburgh Press concerning an operation known as a near total gastric diversion ("stomach stapling procedure") to assist overweight people in the quest to lose weight. The appellant, who suffered from obesity, called upon one of the appellees, Dr. Sergio Betancourt, the surgeon mentioned in the article. The appellant met Dr. Betancourt at his office, which he shared with another named party in this lawsuit, Dr. Reuben R. Zemel, to discuss the possibility of undergoing the "stomach stapling" procedure to alleviate her obesity. Dr. Betancourt questioned the appellant about her previous medical history and what other weight control methods she had attempted in the past. After the appellant decided to proceed with the "stomach stapling" procedure, Dr. Betancourt referred her to Dr. Douglas F. Clough (appellee), who conducted a pre-surgery physical examination of the appellant. During the performance of this physical examination, the appellant alleges that Dr. Clough did not discuss any aspect of the operation or mention that there were alternative methods for treating the appellant's obesity.

Three weeks later, the appellant was admitted to Allegheny General Hospital to undergo the "stomach stapling" procedure. Upon her admission, the appellant was examined by Dr. Kira Kislan (appellee). The appellant alleges that Dr. Kislan then had her sign a standard hospital consent form entitled "Consent Upon Admission for Routine Diagnosis and Treatment" without discussing either the operation or alternative modes of treatment.

Additionally, the appellant further alleges that Dr. Kislan instructed Nurse Lisa Lockerman, R.N. (appellee), to obtain the appellant's signature on another standard hospital consent form entitled, "Consent to Operation, Anesthetics, and Special

Procedures." The appellant also asserts that Nurse Lockerman did not advise her of the risks concerning the operation nor did she suggest to the appellant any possible alternative ways of treating her obesity problem.

The appellant was then examined by Dr. Martin McGrogan (appellee), of the Allegheny Anesthesiology Associates. The purpose of this examination was to determine the proper anesthetic to utilize for the appellant's operation. The appellant alleges that neither Dr. McGrogan, nor Dr. Weniger (appellee), who was the actual anesthesiologist during the operation, discussed with the appellant the possibility of the alternative methods of treatment for her obesity problem.

The following day, March 22, 1988, the appellant underwent the "stomach stapling" procedure. The operation was performed by Dr. Betancourt with Dr. Kislan and Dr. Cmolik [1] assisting. Shortly thereafter, the appellant asserts that she suffered complications from the operation. These complications include a pulmonary embolism, acute respiratory distress, phlebitis of the arm, acute bronchitis, stroke and a right carotid artery occlusion. The appellant claims all of the above medical problems stem directly from the operation.

On March 21, 1990, the appellant praeciped for a writ of summons which was served upon the following appellees, Dr. Sergio Betancourt, Dr. Kira Kislan, Dr. Douglas Clough, Dr. Martin McGrogan, Dr. Frederick Weniger, Nurse Lisa Lockerman, Allegheny General Hospital, and Allegheny Anesthesiology Associates. [2] The appellant's six count complaint was subsequently filed on June 11, 1990.

In Count I of her complaint, the appellant set out a cause of action against all of the appellees based upon a battery theory of lack of informed consent. Preliminary objections in the nature of demurrers to Count I were filed by the following

1. Although Dr. Cmolik is mentioned in paragraph 18 of Count I of the appellant's complaint, he was not served by the appellant with notice of this lawsuit and is not a party.

2. Dr. Reuben Zemel was also served with the writ of summons and is a party defendant in this lawsuit. However, Dr. Zemel filed no preliminary objections to the appellant's complaint and is not an appellee in this appeal.

appellees: Allegheny General Hospital, Nurse Lockerman, Doctors Clough and Weniger and the Allegheny Anesthesiology Associates. All of the above-mentioned appellees argued that only the surgeons who actually performed the operation may be found liable under the battery theory of informed consent. Therefore, because they did not operate on the appellant, she failed to state an informed consent cause of action against them. The trial court sustained these demurrers and dismissed Count I as to the above-mentioned appellees.

Count II of the appellant's complaint set out a cause against all of the appellees based upon a negligence theory of failure to obtain the appellant's informed consent. All of the appellees filed preliminary objections in the nature of demurrers to Count II, arguing that Pennsylvania does not permit recovery under a negligence theory of lack of informed consent. Thus, the appellant failed to state a cause of action for which recovery could be had. The trial court sustained the demurrers of all of the appellees and dismissed Count II.

In Count III of her complaint, the appellant expounded a cause of action against Doctors Betancourt, Zemel, Clough, and the Allegheny General Hospital based upon their purported negligence in conducting unnecessary surgery upon the appellant in view of her high-risk status and because of the availability of other, less dangerous, non-surgical means of treating her obesity problem. Dr. Clough filed a preliminary objection in the nature of a demurrer to Count III. In his demurrer, Dr. Clough contended that because he was not involved in the performance of the operation, he could not be held liable even if the appellant's surgery was found to be unnecessary. Dr. Clough's demurrer to Count III was sustained, thus dismissing him from the lawsuit.

Count IV alleged a misrepresentation cause of action against Dr. Betancourt. No preliminary objections were filed by Dr. Betancourt to Count IV.

Count V set forth a cause of action against Doctors Betancourt, Zemel, Kislan, Nurse Lockerman, and the Allegheny General Hospital under the Pennsylvania Unfair Trade Prac-

tices and Consumer Protection Law (Pa.UTPCPL) (73 Pa.S.A. § 201–1 *et seq.*). Preliminary objections in the nature of demurrers were filed by all of the above-mentioned appellees to Count V, arguing that the Pa.UTPCPL is inapplicable to medical services. The trial court sustained the appellees' demurrers and dismissed Count V.

Finally in Count VI, the appellant propounded in paragraph 54 a negligence cause of action against Doctors Betancourt, Zemel, Weniger, Allegheny Anesthesiology Associates, and Allegheny General Hospital alleging that all of the above negligently administered fluids to the appellant during the operation, causing her to suffer congestive heart failure and all of the other previously mentioned alleged complications. In paragraph 55, the appellant alleged that the above-mentioned appellees were otherwise negligent during the operation. The trial court sustained the appellees' preliminary objections to paragraph 55. However, the trial court then directed the appellant to file a more specific pleading in paragraph 55. This timely appeal followed.

On appeal, the appellant raises seven issues for our review:

I. WHETHER THE LOWER COURT ERRED IN DISMISSING COUNT I OF THE COMPLAINT AS IT RELATED TO DEFENDANT ALLEGHENY GENERAL HOSPITAL SINCE IT WAS VICARIOUSLY LIABLE FOR THE ACTIONS OF ITS AGENTS, DR. BETANCOURT, DR. McGROGAN, DR. KISLAN, DR. CMOLIK AND NURSE LOCKERMAN?

II. WHETHER THE LOWER COURT ERRED IN DISMISSING COUNT I OF THE COMPLAINT AS IT RELATED TO DEFENDANTS WENIGER AND ALLEGHENY ANESTHESIOLOGY ASSOCIATES SINCE THEY FAILED TO OBTAIN THE INFORMED CONSENT OF THE PLAINTIFF PRIOR TO THE ADMINISTRATION OF ANESTHESIA?

III. WHETHER THE LOWER COURT ERRED IN DISMISSING COUNT I OF THE COMPLAINT AS IT RELATED TO DEFENDANTS CLOUGH, LOCKERMAN, ALLEGHENY GENERAL HOSPITAL, WENIGER AND ALLEGHENY ANESTHESIOLOGY ASSO-

CIATES, SINCE THEY WERE INVOLVED AS JOINT TORTFEASORS IN THE LACK OF INFORMED CONSENT ON THE BASIS OF THEIR CONCERT OF ACTION IN THE TREATMENT OF THE PLAINTIFF?

IV. WHETHER THE LOWER COURT ERRED IN DISMISSING COUNT II OF THE COMPLAINT AS TO ALL DEFENDANTS SINCE THE NEGLIGENT FAILURE TO OBTAIN THE INFORMED CONSENT OF THE PLAINTIFF PRIOR TO SURGERY AND ADMINISTRATION OF ANESTHESIA CAN OR SHOULD SET OUT A CAUSE OF ACTION OF MEDICAL MALPRACTICE?

V. WHETHER THE LOWER COURT ERRED IN DISMISSING COUNT V OF THE COMPLAINT AS TO ALL DEFENDANTS SINCE THE UNFAIR TRADE PRACTICES ACT DOES OR SHOULD APPLY TO MEDICAL SERVICES?

VI. WHETHER THE LOWER COURT ERRED IN DISMISSING COUNT III OF THE COMPLAINT AS IT RELATED TO DEFENDANT CLOUGH SINCE HE FAILED TO PERFORM HIS DUTY TO INSURE UNNECESSARY SURGERY WAS NOT CONDUCTED UPON THE PLAINTIFF AND WAS A JOINT TORTFEASOR WITH DR. BETANCOURT ON THE BASIS OF HIS CONCERT OF ACTION IN THE TREATMENT OF THE PLAINTIFF?

VII. WHETHER THE LOWER COURT ERRED IN REQUIRING A MORE SPECIFIC PLEADING REGARDING PARAGRAPH 55 OF THE COMPLAINT (COUNT VI) SINCE THE PARAGRAPH WHEN READ IN CONJUNCTION WITH PARAGRAPH 56 ADEQUATELY SET OUT A CAUSE OF ACTION BASED UPON *RES IPSA LOQUITUR?*

(The Appellant's Brief at 3).

## JURISDICTION

Before this Court may address the merits of the seven issues raised by the appellant, we are required to

determine whether these issues are properly before us. Generally, an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court. *Pugar v. Greco*, 483 Pa. 68, 72–73, 394 A.2d 542, 547 (1978). An order is generally not a "final order" which may be appealed unless it serves to put the litigant out of court either by litigation or disposing of the case entirely. *Bender's Floor Covering v. Gardner*, 387 Pa.Super. 531, 564 A.2d 518 (1989). Although an order dismissing less than all counts of a multi-count complaint is generally not appealable, such an order will be considered final and appealable if the dismissed count or counts are not merely alternate theories of recovery but instead state separate and distinct causes of action. *Jenkins v. Hospital of Medical College*, 401 Pa.Super. 604, 585 A.2d 1091 (1991); *Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990). A separate cause of action can be distinguished from an alternative theory of recovery by looking at the relief requested; alternative theories of recovery are different means for obtaining the same relief for the same harm caused by the same party, whereas separate causes of action request different relief for different harm. *Trackers Raceway v. Comstock Agency*, 400 Pa.Super. 432, 438, 583 A.2d 1193, 1196 (1990). A plaintiff may not recover on all alternative theories as this would constitute a duplicative recovery. *Garofolo v. Shah*, 400 Pa.Super. 456, 460, 583 A.2d 1205, 1207 (1990). However, a plaintiff may potentially recover complete relief on each of the separate causes of action. *Trackers Raceway v. Comstock Agency, supra*, 400 Pa.Super. at 439, 583 A.2d at 1196. Finally, an order will be considered final if it puts the plaintiff out of court on all theories of recovery asserted against a given defendant. *Sweener v. First Baptist Church*, 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987); *Dorohovich v. West American Ins. Co.*, 403 Pa.Super. 412, 417, 589 A.2d 252, 255 (1991).

██ The appellant, in her first issue on appeal, contends that the trial court erred in dismissing Count I of her complaint in which she maintains that Allegheny General Hospital is vicariously liable to her for the battery committed upon her

by the failure of Dr. Betancourt, Dr. McGrogan, Dr. Kislan, Dr. Cmolik, and Nurse Lockerman to obtain her informed consent to the "stomach stapling" procedure. In Count I, the appellant seeks recovery for all of the injuries she allegedly suffered as a result of the operation. However, the appellant has set out alternative theories of recovery for the same damages in Counts III and VI of her complaint which are pled under a negligence theory against all of the above-mentioned appellees except Nurse Lockerman. Thus, the issue of whether the trial court properly dismissed Count I as to Dr. Betancourt, Dr. McGrogan and Dr. Kislan is not ripe for appellate review at this time and must be quashed. *See Jenkins v. Hosp. of Medical College, supra; Garofolo v. Shah, supra.*

The appellant's second issue on appeal, which contends that the trial court erred in dismissing Count I against Dr. Weniger and the Allegheny Anesthesiology Associates, must also be quashed under the same analysis. Although the trial court directed the appellant to file a more specific pleading to paragraphs 54, 55B–1, and 55E–1 of C of Count VI, the appellant has not been placed out of court on her negligence theory by the trial court's direction if she successfully amends the above-mentioned paragraphs of Count VI. Accordingly, the appellant's second issue on appeal is not ripe for appellate review and must be quashed. *See Conaway v. 20th Century Corp.,* 491 Pa. 189, 196–197, 420 A.2d 405, 409 (1980) (order of the trial court which dismissed complaint but invited reconsideration with the possibility of granting leave to amend complaint was not a final order).

In her third issue on appeal, the appellant contends that the trial court erred in dismissing Count I against Dr. Clough, Dr. Weniger, Nurse Lockerman, Allegheny General Hospital and the Allegheny Anesthesiology Associates. The appellant argues that joint tortfeasor liability has attached to all of the above-listed appellees due to their failure to obtain her informed consent to the "stomach stapling" procedure. This issue must also be quashed as to all of the above-mentioned appellees except Dr. Clough and Nurse Lockerman

because the appellant still has negligence claims pending against these particular appellees either through Count III or Count VI. Thus, the appellant's third issue on appeal is from an order dismissing an alternative theory of recovery and must await the entry of a final judgment to the appellant's negligence claims before being ripe for appellate review. *See Jenkins v. Hosp. of Medical College, supra; Garofolo v. Shah, supra; Trackers Raceway v. Comstock Agency, supra.*

■ However, the trial court's orders dismissing Count I as to Dr. Clough and Nurse Lockerman are not interlocutory. The trial court's dismissal of Count I together with its dismissal of Count II and Count III against Dr. Clough and its dismissal of Count I, Count II and Count V against Nurse Lockerman has placed the appellant out of court against these particular appellees on all alternative theories of recovery. Thus, the trial court's orders dismissing the above-listed counts against Dr. Clough and Nurse Lockerman are final orders and are ripe for appellate review at this time. *See Sweener v. First Baptist Church, supra; Dorohovich v. West American Ins. Co., supra.*

The appellant's fourth issue on appeal concerns whether the trial court properly dismissed Count II in which the appellant asserts an informed consent cause of action pled under a negligence theory against all of the appellees. As Count II merely asserts an alternative theory of recovery for the same harm, we are only permitted to address this issue as it pertains to Dr. Clough and Nurse Lockerman. The appellant's appeal from the order dismissing Count II must be quashed as to all other appellees. *See Sweener v. First Baptist Church, supra; Dorohovich v. West American Ins. Co., supra.*

■ The appellant's fifth issue on appeal contends that the trial court erred in dismissing her Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pa.UTPCPL) claim against Dr. Betancourt, Dr. Zemel, Dr. Kislan, Nurse Lockerman, and Allegheny General Hospital. The appellant's Pa. UTPCPL claim against the above-mentioned appellees is a

statutory cause of action which, if proved, would entitle the appellant to distinctly different relief than she would be permitted to recover under her informed consent and negligence causes of action. Accordingly, the appellant's appeal from the trial court's order dismissing her Pa.UTPCPL claims against all of the appellees is from a final order and is properly before this Court on appeal. *See Trackers Raceway v. Comstock Agency, supra; Gatten v. Merzi,* 397 Pa.Super. 148, 579 A.2d 974 (1990); *Valley Forge Towers v. Ron–Ike F. Ins.,* 393 Pa.Super. 339, 574 A.2d 641 (1990), *affirmed per curiam,* 529 Pa. 512, 605 A.2d 798 (1992); *Hardy v. Pennock Ins. Co.,* 365 Pa.Super. 206, 529 A.2d 471 (1987).

The appellant's sixth issue on appeal, where she contends that the trial court erred in dismissing Count III against Dr. Clough, is also properly before this Court because, as has been previously stated, the appellant has been placed out of court against Dr. Clough. *See Sweener v. First Baptist Church, supra; Dorohovich v. West American Ins. Co., supra.*

 Finally, we must determine whether the appellant's seventh issue is properly before this Court on appeal. In her seventh issue, the appellant contends that the trial court erred in directing her to file a more specific pleading as to paragraph 55 of Count VI. Because the trial court's order merely directed the appellant to file a more specific pleading to paragraph 55, the appellant has not been placed out of court on her negligence cause of action. Thus, the appellant's appeal from the trial court's order directing the appellant to file a more specific pleading in paragraph 55 is interlocutory and must be quashed. *See Conaway v. 20th Century Corp., supra.*

## *Standard of Review*

 Before addressing the merits of the issues raised by the appellant which are properly before this Court on appeal, we must first set forth the applicable standard of review. Our standard of review of an order granting preliminary objections in the nature of a demurrer is well-settled and has been summarized as follows:

All material facts set forth in the pleadings as well as all inferences reasonably deducible therefrom are admitted as true for the limited purpose of this review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. In reviewing the grant of a demurrer we are not bound by the inferences drawn by the trial court, nor are we bound by its conclusions of law. Furthermore, we will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that further proceedings would clearly be fruitless. *Ford Motor Credit Co. v. Caiazzo*, 387 Pa.Super. 561, 566, 564 A.2d 931, 933 (1989) (collecting cases). Finally, "the novelty of a claim or theory alone, does not compel affirmance." *Neff v. Lasso, supra,* [382 Pa.Super. 487] 555 A.2d [1304] at 1305 [ (1989) ].

*Valley Forge Towers v. Ron–Ike F. Ins., supra,* 574 A.2d at 644.

In her first appealable issue, the appellant contends that the trial court erred in dismissing her informed consent under a battery theory cause of action against Dr. Clough and Nurse Lockerman, as joint tortfeasors. The appellant argues that joint tortfeasor liability attached to both Dr. Clough and Nurse Lockerman because they acted in concert with the other appellees, and were integrally involved in the failure to obtain her informed consent to the "stomach stapling" operation. Therefore, the appellant asserts that she is entitled to recover from both Dr. Clough and Nurse Lockerman as joint tortfeasors for their failure to obtain her informed consent to the operation.

Joint tortfeasors are parties who either act together in committing a wrong or whose acts, if independent of each other, unite a single injury. *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803 (1979). A joint tort occurs where two or more persons owe the same duty to the plaintiff and by their common negligence, the plaintiff is injured. *LaZar v.*

*RUR Industries, Inc.,* 337 Pa.Super. 445, 487 A.2d 29 (1985); *Capone v. Donovan,* 332 Pa.Super. 185, 480 A.2d 1249 (1984).

The appellate courts of this Commonwealth have historically interpreted the doctrine of informed consent as applying only to the surgeons who perform operations without first securing the informed consent of the patient. *Friter v. IOLAB Corp.,* 414 Pa.Super. 622, 626, 607 A.2d 1111, 1113 (1992). In determining whether the patient's consent to a surgical operation was "informed," one must consider whether the physician disclosed to the patient all of the facts, risks, and alternatives, which a reasonable person would deem significant in making a decision to undergo the recommended procedure. *Moure v. Raeuchle,* 529 Pa. 394, 404, 604 A.2d 1003, 1008 (1992); *Doe v. Dyer-Goode,* 389 Pa.Super. 151, 156, 566 A.2d 889, 891 (1989), *appeal denied,* 527 Pa. 587, 588 A.2d 509 (1990); *Rogers v. Lu,* 335 Pa.Super. 595, 485 A.2d 54 (1984). An operation performed without the patient's informed consent constitutes a battery upon the patient, thus making the physician or physicians liable for any injuries regardless of whether the surgery was negligently performed. *Moure v. Raeuchle, supra,* 604 A.2d at 1008; *Doe v. Dyer-Goode, supra,* 566 A.2d at 891. *Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081 (1989), *appeal denied,* 524 Pa. 621, 571 A.2d 383 (1989); *Sagala v. Tavares,* 367 Pa.Super. 573, 533 A.2d 165 (1987), *appeal denied,* 518 Pa. 626, 541 A.2d 1138 (1988). *See also Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966); *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963).

Under normal circumstances, only the physician who performs the operation on the patient has the duty of obtaining the patient's informed consent. Therefore, Dr. Clough, who only performed the appellant's pre-surgery physical examination, and Nurse Lockerman, who is not a physician, were under no duty to obtain the appellant's informed consent to the operation. Accordingly, the trial court properly held that neither Dr. Clough nor Nurse Lockerman could be held to be joint tortfeasors with the physicians who performed the operation in the appellant's informed consent cause of action. Thus, the trial court properly sustained Dr. Clough's and Nurse

Lockerman's preliminary objections in the nature of a demurrer to Count I.

The appellant, in her second appealable issue, contends that the trial court erred in dismissing Count II of her complaint which asserted an informed consent cause of action based upon a negligence theory against Dr. Clough and Nurse Lockerman. The appellant argues that Pennsylvania is out of step with other jurisdictions by failing to recognize an informed consent cause of action based upon negligence. Therefore, the appellant asserts that it would be appropriate at this time for this Court to recognize an informed consent cause of action based upon negligence. We disagree.

As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. In *Gray v. Grunnagle, supra,* and *Smith v. Yohe, supra,* our Supreme Court held that the patient's consent is a prerequisite to a surgical operation and an operation without the patient's consent is a battery. Recently, the Supreme Court has re-affirmed this long-standing precedent in *Moure v. Raeuchle, supra.* Moreover, there have been numerous decisions of this Court, both panel and *en banc,* which have applied the rule set forth in *Gray v. Grunnagle, supra* and *Smith v. Yohe, supra,* to informed consent cases. *Levenson v. Souser, supra; Doe v. Dyer–Goode, supra; Sagala v. Tavares, supra; Sauro v. Shea,* 257 Pa.Super. 87, 390 A.2d 259 (1978); *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971). Thus, we are compelled to analyze informed consent cases under a battery theory until and unless our Supreme Court decides to recognize an informed consent cause of action grounded in negligence. *Levenson v. Souser, supra.* Accordingly, the trial court properly sustained Dr. Clough's and Nurse Lockerman's preliminary objections in the nature of a demurrer to Count II.

The appellant's third appealable issue is whether the trial court erred in dismissing Count III of her complaint against Dr. Clough. The appellant contends that the trial court erred in dismissing her negligence claim against Dr.

Clough as a joint tortfeasor who acted in concert with Dr. Betancourt in the performance of unnecessary surgery upon her. The appellant argues that Dr. Clough breached his duty towards her during the pre-surgery physical examination when he failed to advise her that there were alternative, non-surgical treatments for her obesity problem.

As previously discussed above, Dr. Clough had no duty to obtain the appellant's informed consent; therefore, he had no duty to discuss with her the necessity of, or alternative to, the surgery. Accordingly, Dr. Clough could not be held liable for the appellant's injuries even if her surgery proved to be unnecessary. Thus, the trial court properly sustained Dr. Clough's demurrer to Count III.

The appellant's fourth appealable issue is that the trial court erred in dismissing Count V of her complaint. In Count V, the appellant sought recovery against Dr. Betancourt, Dr. Zemel, Dr. Kislan, Nurse Lockerman, and Allegheny General Hospital under the Pa.UTPCPL for alleged misrepresentations concerning the "stomach stapling" procedure. The appellant contends that the trial court erred in holding that Pa.UTPCPL was inapplicable to the procedures of medical services. The appellant argues that as the underlying purpose of the Pa.UTPCPL is the protection of the public from unfair or deceptive practices in the conduct of any trade or commerce, any person who has been victimized by misrepresentations may assert a cause of action under the Pa.UTPCPL. The appellant asserts that as she has been victimized by the appellees' misrepresentation concerning the "stomach stapling" procedure, she has properly set forth a cause of action against them under the Pa.UTPCPL. We disagree.

The law regarding the appellant's contention that the Pa. UTPCPL is applicable to the procedures of medical services has been aptly set forth by this Court in *Gatten v. Merzi, supra,* 397 Pa.Super. at 151–152, 579 A.2d at 976.

According to the Act, unfair methods of competition and deceptive practices in the conduct of any trade or commerce are unlawful. 73 P.S. § 201–3. The phrase "trade or commerce" includes the sale of services. 73 P.S. § 201–2(3).

Among the practices condemned by the Act are various misrepresentations as well as other fraudulent conduct that creates a likelihood of confusion or misunderstanding. 73 P.S. § 201–2(4). However, even though the Act does not exclude services performed by physicians, it is clear that the Act is intended to prohibit unlawful practices relating to trade or commerce and of the type associated with business enterprises. It equally is clear that the legislature did not intend the Act to apply to physicians regarding medical services.

A reading of appellant's complaint demonstrates that appellant is premising her cause of action under the Act on statements made to her about her course of treatment and the probable results of that treatment. To impose the liability provided for by the Act to such statements would have the effect of making a physician the absolute guarantor of both his treatment and the anticipated results even in the absence of a specific contract warranting those results. Thus, each time a physician, *without fault,* performs an unsuccessful operation, he could face liability under the Act for preoperative statements abut its anticipated outcome. Such an interpretation, which is inconsistent with our precedent regarding liability of physicians in performance of their medical services, would be absurd.

Under our law, the liability of a physician is premised upon either fault, lack of informed consent, or a specific contract warranting certain results. There is no indication that the Act was intended to create a cause of action for every statement made by a physician regarding a patient's condition, the likelihood for success of a given procedure, or the recommended course of treatment. Such an interpretation of the Act would make physicians the guarantors of their fault-free work. This is absurd. It is clear that the legislature, in passing the Act, did not intend to disturb existing common and statutory law regarding when liability for the rendition of medical services attaches to a physician.

Accordingly, because the Pa.UTPCPL is inapplicable to the providers of medical services, the trial court properly sus-

tained the above-mentioned appellees' preliminary objections in the nature of a demurrer to Count V of the appellant's complaint.

Based upon the foregoing, the trial court's order sustaining Dr. Clough's preliminary objections in the nature of a demurrer to Count I, Count II and Count III is affirmed. The trial court's orders sustaining Nurse Lockerman's preliminary objections in the nature of a demurrer to Count I, Count II and Count V are also affirmed. The trial court's orders sustaining the preliminary objections in the nature of a demurrer of appellees' Allegheny General Hospital, Dr. Betancourt and Dr. Kislan to Count V are affirmed. The appellant's first issue on appeal to all named appellees except Nurse Lockerman and her second issue on appeal are quashed because they are improper appeals from interlocutory orders. The appellant's third and fourth issues on appeal are also quashed as to all appellees except Dr. Clough and Nurse Lockerman. Finally, the appellant's seventh issue on appeal requiring her to file a more specific pleading to Count VI is also quashed as an appeal taken from an interlocutory order.

Orders affirmed in part, and appeal quashed in part.