Nora J. AULER and Paul Auler,
Appellants–Plaintiffs,

v.

Bruce VAN NATTA, M.D., and Humana
Womens Hospital, Appellees–
Defendants.

No. 29A02–9703–CV–191.

Court of Appeals of Indiana.

Oct. 21, 1997.

Stephen L. Williams, Hansford C. Mann, Mann Law Firm, Terre Haute, for Appellants–Plaintiffs.

David S. Allen, Sandra Boyd Williams, Locke Reynolds Boyd & Weisell, Indianapolis, for Appellees–Defendants.

## OPINION

KIRSCH, Judge.

In this medical malpractice action for the implantation of a saline breast implant without the patient's consent, Nora Auler and

husband Paul Auler appeal the summary judgment in favor of Humana Womens Hospital, now Women's Hospital–Indianapolis (the Hospital). The issue presented is whether the Hospital had or assumed a duty to secure the patient's informed consent for the implantation.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts construed in favor of the Aulers show that Nora, suffering cancer of the left breast, was admitted to the Hospital for removal of the breast and reconstructive surgery. Nora told the surgeon, Bruce Van Natta, M.D., that she did not want a breast implant. At the Hospital, Nora signed a general consent form entitled "Consent to Operation or Other Special Procedure." The heading, "Humana Womens Hospital–Indianapolis" appears in bold print at the top right portion of the form. Next, the form reads in small print:

> "This form must be completed for each medical or surgical treatment over and above routine hospital services, diagnostic procedures and medical treatment. *The explanation of the operation or special procedure must be given to the patient by the named physician since only he is competent to do so.* The explanation must be given and signature must be obtained prior to preoperative sedation in order to assure informed consent. The explanation of procedures in statement 1 below must be shown in lay language. . . ."

*Record* at 128 (emphasis added). Statement "1," denominated "nature of the procedure," contains the following handwritten words, "Left modified Radical Mastectomy, Immediate Reconstruction[,] Left Latissimus Dorsi Flap." Nowhere does the document reflect that a saline breast implant was contemplated.

The body of the consent form says that "[t]he risks involved and the possibility of complications have been explained to me." Nora signed the form below the statement: "I HAVE READ AND FULLY UNDERSTAND THE ABOVE CONSENT FORM."

A registered nurse witnessed Nora's signature on the form. *Record* at 128. No other written consent form was obtained.

On the same day, Thomas Schmidt, M.D., surgically removed Nora's left breast. Thereafter, Bruce Van Natta, M.D., performed the reconstructive surgery, inserting a saline-filled breast implant. Nora was unaware of the implant until the next year when it was observed in a sonogram.

The Aulers filed a proposed complaint with the Indiana Department of Insurance. They named the Hospital and Dr. Van Natta as defendants. In a unanimous decision, the Medical Review Panel concluded that the Hospital had complied with the appropriate standard of care. With regard to Dr. Van Natta, the panel found there was a material issue of fact, not requiring expert opinion, concerning the issue of informed consent.[1]

The Aulers then filed a medical malpractice complaint against both the Hospital and Dr. Van Natta in the trial court. The Hospital moved for summary judgment and submitted a certified copy of the Medical Review Panel opinion. Following a hearing, the court entered summary judgment in favor of the Hospital. The Aulers now appeal.

## DISCUSSION AND DECISION

### Standard of Review

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Sizemore v. Arnold,* 647 N.E.2d 697, 698 (Ind.Ct.App.1995). When reviewing a decision on a summary judgment motion, this court applies the same standard as does the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey,* 642 N.E.2d at 265. A genuine issue of material fact exists where facts concerning a dispositive issue are in dispute or where the undis-

---

1. Dr. Van Natta does not join in this appeal.

puted facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App. 1991). In determining whether summary judgment is appropriate, all facts and reasonable inferences must be construed against the moving party. *Wickey,* 642 N.E.2d at 265.

### Informed Consent

■　A plaintiff alleging medical malpractice must demonstrate that the defendant, owing a duty to the plaintiff, violated a standard of reasonable care, causing injury to the plaintiff. *Wright v. Carter,* 622 N.E.2d 170, 171 (Ind.1993). Generally, the existence of a legal duty is a question of law for the court to determine. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 250 (Ind.1996); *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). In the context of negligence, duty is a concept that constantly changes to mirror changes in social conditions. *Johnson v. Sears, Roebuck & Co.,* 113 N.M. 736, 832 P.2d 797, 799 (Ct.App.1992); *Goldsberry v. Grubbs,* 672 N.E.2d 475, 478 (Ind.Ct.App. 1996) (quoting *Gariup Const. Co. v. Foster,* 519 N.E.2d 1224, 1227 (Ind.1988)).

■　The Aulers contend that the Hospital is liable for malpractice because it failed to obtain her informed consent to the breast implant procedure. The doctrine of informed consent is based upon the patient's right "to intelligently reject or accept treatment." *Revord v. Russell,* 401 N.E.2d 763, 767 (Ind.Ct. App.1980). Indiana law recognizes the duty of a physician to make a reasonable disclosure of material facts relevant to the decision the patient is required to make. *Culbertson v. Mernitz,* 602 N.E.2d 98, 101 (Ind.1992) (citing *Joy v. Chau,* 177 Ind.App. 29, 39, 377 N.E.2d 670, 676–77 (1978)). This duty arises from the relationship between the physician and the patient and is imposed as a matter of law. *Id.*

Other jurisdictions have recognized that a hospital can be held vicariously liable for the physician's breach of the duty to obtain informed consent. *See, e.g., Trousdale v. City of Faith Hosp., Inc.,* 892 P.2d 678, 680 (Okla. Ct.App.1995); *Burnet v. Spokane Ambulance,* 54 Wash.App. 162, 772 P.2d 1027, 1031 (1989); *Valcin v. Public Health Trust of Dade County,* 473 So.2d 1297, 1307 (Fla.Dist. Ct.App.1984), *modified,* 507 So.2d 596 (Fla. 1987). In this case, the Aulers do not assert that Dr. Van Natta was the Hospital's employee or agent or that the Hospital otherwise controlled Dr. Van Natta's practice in any way. Nor do they contend that the Hospital knew of any propensity that Dr. Van Natta might have had for not obtaining a patient's informed consent. Thus, they make no claim that the Hospital is vicariously liable. We, therefore, consider only whether the Hospital had an independent duty to obtain Nora's informed consent to insert the breast implant and whether the Hospital gratuitously assumed such a duty when it provided Nora with the general consent form.

### A. Independent Legal Duty

The Aulers first claim that the Hospital possessed a legal duty, independent from that of the physician, to obtain Nora's informed consent to perform the surgery. Although this issue has not previously been decided in Indiana, the majority of courts which have considered the question have declined to impose upon hospitals a general duty to obtain a patient's informed consent. *Giese v. Stice,* 252 Neb. 913, 567 N.W.2d 156, 162–63 (1997) (citing cases); *see, e.g., Krane v. Saint Anthony Hosp. Sys.,* 738 P.2d 75, 77 (Colo.Ct.App.1987) (generally, hospital does not have duty to advise patient prior to surgery as to surgical procedure to be employed and risks involved); *Cross v. Trapp,* 170 W.Va. 459, 294 S.E.2d 446, 459 (1982) (absent agency relationship with physician, hospital had no duty to obtain patient's informed consent to surgery).[2] The reasoning for

2. In urging us to recognize the Hospital's independent duty to obtain informed consent, the Aulers direct us to *Friter v. Iolab Corp.,* 414 Pa.Super. 622, 607 A.2d 1111 (1992), and *Corrigan v. Methodist Hosp.,* 158 F.R.D. 70 (E.D.Pa. 1994). In *Friter,* the court held that the hospital may be held liable for failing to obtain a patient's informed consent when the hospital participated in an investigational study involving a non-FDA approved procedure. *Friter,* 607 A.2d at 1116. *Corrigan* involved a motion for judgment on the pleadings in an action alleging that the hospital failed to obtain a patient's informed consent to the use of a particular device. The FDA had allegedly restricted the sale of the device to approved institutions of which the hospital was not

adopting this principle was explained by the Nebraska Supreme Court in *Giese:*

> "Typically, courts reach this conclusion after determining that it is the treating physician who has the education, expertise, skill, and training necessary to treat a patient and determine what information a patient must have in order to give informed consent. These courts recognize that nurses and other nonphysician hospital employees do not normally possess knowledge of 'a particular patient's medical history, diagnosis, or other circumstances which would enable the employee to fully disclose all pertinent information to the patient.'"

*Giese,* 567 N.W.2d at 163 (quoting *Johnson v. Sears, Roebuck & Co.,* 113 N.M. 736, 832 P.2d 797, 799 (Ct.App.1992)) (internal citation omitted); *see Pauscher v. Iowa Methodist Medical Ctr.,* 408 N.W.2d 355, 362 (Iowa 1987) (hospital not required to inform patient regarding "matters that lie at the heart of the doctor-patient relationship").

 Along with the majority of states that have considered this question, we conclude that, in the absence of circumstances supporting a claim for vicarious liability or other special circumstances, a hospital has no independent duty to obtain a patient's informed consent. In doing so, we recognize that one purpose for securing a patient's informed consent is to protect the patient from a physician who, without a legally sufficient consent, commits a battery.[3] If there is a failure of informed consent, no battery occurs until the surgery or other procedure is performed. However, when the physician performs the procedure in the absence of such consent, it is the physician, not the hospital, who commits the battery. We hold that because Dr. Van Natta was not an employee or agent of the Hospital, and no other special circumstances are present, the Hospital had no independent legal duty to obtain Nora's informed consent.

---

one. *Corrigan,* 158 F.R.D. at 73. The district court found that the plaintiff had pled sufficient facts to maintain her cause of action. *Id.* The Aulers do not present us with the extraordinary circumstances that existed in *Friter* and *Corrigan,* and we find these cases inapposite.

**3.** We have recognized that when the substance of a claim of battery is based upon lack of informed

### B. Gratuitous Assumption of a Duty

 Alternatively, the Aulers claim that, by providing the written consent form and obtaining Nora's signature thereon, the Hospital assumed a duty to obtain her legal informed consent to the surgery. Section 324A of the Restatement (Second) of Torts, "Liability to Third Person for Negligent Performance of Undertaking," parallels Indiana's doctrine of assumed duty. *Harper v. Guarantee Auto Stores,* 533 N.E.2d 1258, 1263 n. 4 (Ind.Ct.App.1989), *trans. denied.* Section 324A provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

RESTATEMENT (SECOND) OF TORTS § 324A, at 142 (1965). A party may gratuitously place himself in such a position that the law imposes a duty to perform an undertaking in a manner which will not jeopardize the safety of others, including third parties. *Johnson v. Owens,* 639 N.E.2d 1016, 1019 (Ind.Ct.App. 1994), *trans. denied.*

 Here, the written consent form specifically states: "The explanation of the operation or special procedure must be given to the patient by the named physician since only he is competent to do so." *Record* at

---

consent in the rendition of professional services, the claim generally lies within the definition of malpractice and, therefore, falls within the scope of Indiana's Medical Malpractice Act. *See, e.g., Van Sice v. Sentany,* 595 N.E.2d 264, 267 (Ind.Ct. App.1992); *Collins v. Thakkar,* 552 N.E.2d 507, 511 n. 6 (Ind.Ct.App.1990), *trans. denied.*

128. It also provides that "[t]he risks involved and the possibility of complications have been explained to me." *Record* at 128.

We can draw only one conclusion from the Hospital's general consent form: it was not designed to replace the informed consent required to be given by Dr. Van Natta. *See Cross*, 294 S.E.2d at 460 (mere existence of general written consent form had little significance with regard to what physician may have told patient). The Hospital did not undertake to perform the duty of obtaining informed consent. Consequently, the Hospital did not gratuitously assume the physician's duty to obtain informed consent.

Our decision here comports with that reached by other states that have considered a similar issue. *See, e.g., Ritter v. Delaney,* 790 S.W.2d 29, 32 (Tex.App.1990) (nurse having patient sign hospital permit to operate at order of physician did not amount to hospital assuming physician's "non-delegable duty" of obtaining patient's informed consent); *Porter v. Sisters of St. Mary,* 756 F.2d 669, 673 (8th Cir.1985) (in Missouri, if hospital furnishes consent forms to patient for signature, it does not thereby assume duties that are business of physician); *Cross,* 294 S.E.2d at 458 n. 9 (based upon Idaho Code § 39–4306, hospital with approval of physician or dentist may perform ministerial act of documenting such consent).

### CONCLUSION

We hold that, under the facts and circumstances presented, the Hospital did not have an independent legal duty to obtain Nora's informed consent to insert the saline breast implant. We further conclude that there is no genuine issue of material fact regarding the Hospital's gratuitous assumption of such a duty. Absent a duty, the Hospital can not be liable for malpractice. The trial court properly entered summary judgment in favor of the Hospital.

Affirmed.

FRIEDLANDER and ROBERTSON, JJ., concur.