Brenda **SPAR**, Appellant–Plaintiff,

v.

**JIN S. CHA, M.D.**, Appellee–Defendant.

No. 45A05–0611–CV–683.

Court of Appeals of Indiana.

Feb. 20, 2008.

Rehearing Denied May 8, 2008.

Steven L. Langer, Tara M. Wozniak, Langer & Langer, Valparaiso, IN, Timothy J. Kennedy, Montross Miller Muller Mendelson & Kennedy, Indianapolis, IN, Attorneys for Appellant.

Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Brenda Spar brought a malpractice action against Dr. Jin S. Cha, alleging he was negligent in treating her and in failing to obtain her informed consent. The jury rendered a verdict for Dr. Cha, from which Spar now appeals. Concluding Dr. Cha should not have been permitted to assert the defense of incurred risk or introduce evidence of Spar's consent to prior unrelated surgeries, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

Spar first visited Dr. Cha on November 15, 1999. At that time, Spar already had a significant medical history. In 1986, Spar sustained serious injuries in an automobile accident. She underwent emergency treatment, which included abdominal surgery and the removal of her spleen. Because of her injuries and surgeries, Spar had several scars on her abdomen. In 1987, 1989, 1991, and 1994, Dr. McKay McKinnon performed surgery to reduce the appearance of Spar's scars. Prior to each surgery, Dr. McKinnon explained the risks of the surgery, including injury to the bowel and infection.

Spar saw Dr. Cha, an OB/GYN, on November 15, 1999 because she wanted to have a baby. Spar informed him she had been taking Depo–Provera until August 1999. Dr. Cha told her the Depo–Provera might still be interfering with her ability to become pregnant, and he asked Spar to return when she began menstruating again.

In July 2000, Dr. M. Nabil Shabeeb, a general surgeon, removed Spar's gallbladder. Prior to the surgery, Dr. Shabeeb explained the risks of the surgery to Spar. The risks included perforation of the intestine and infection. Dr. Shabeeb intended to perform laparoscopic surgery to remove her gallbladder. In laparoscopic surgery, the doctor makes small incisions and completes the surgery through the use of scopes. However, Dr. Shabeeb encountered scar tissue and could not complete the procedure laparoscopically. Therefore, Dr. Shabeeb performed a laparotomy, in which larger incisions are made so the doctor can view the internal organs directly.

On November 9, 2000, Spar made her second visit to Dr. Cha. Dr. Cha expressed concern her fallopian tubes were blocked. He recommended a hysterosalpingogram (HSG) to explore the possibility of a blockage. An HSG is a "realtime x-ray" study in which dye is used to outline the uterus and "help delineate if the [fallopian] tubes are open." (Tr. at 85–86.) Spar underwent an HSG on December 12, 2000. Dr. Cha told Spar the results of the HSG were inconclusive. He recommended

a diagnostic laparoscopy to further examine her fallopian tubes. After discussing the recommendation with her husband, Spar scheduled the surgery.

The surgery was performed on January 12, 2001. Spar was given a consent form at 10:55 a.m. She arrived in the operating room at 11:50 a.m. As Spar was being wheeled to the operating room, Dr. Cha discussed the procedure with her. He completed the surgery, and Spar was discharged from the hospital the same day.

After she was discharged, Spar became ill and was re-admitted to the hospital on January 15, 2001. It was discovered that Dr. Cha had perforated Spar's bowel during the laparoscopy, which resulted in a serious infection.

Spar filed a proposed complaint with the Indiana Department of Insurance. The case was submitted to a medical review panel of three OB/GYNs. The panel unanimously found Dr. Cha had failed to comply with the appropriate standard of care.

In a motion *in limine,* Spar asked the trial court to exclude evidence of her consent to previous surgeries. The trial court believed the evidence was relevant and ruled the evidence would be admissible unless the attorneys notified the court of any change in circumstances.

At trial, Spar sought to prove Dr. Cha's treatment was negligent and he failed to obtain her informed consent. Members of the medical review panel testified Dr. Cha failed to complete less invasive testing before recommending the laparoscopy, did not discuss alternatives with Spar, should not have performed a laparoscopy because of Spar's scarring, and failed to obtain Spar's informed consent. Dr. Cha argued Spar was aware of the risks of abdominal surgery because of her previous surgeries;

therefore, she incurred the risk of infection when she proceeded with the surgery. The jury returned a verdict for Dr. Cha.

## DISCUSSION AND DECISION

Spar raises several issues for appeal, which we restate as follows: (1) whether the trial court erred by permitting Dr. Cha to pursue an incurred risk defense; and (2) whether the trial court erred by admitting evidence of Spar's consent to previous surgeries.[1]

### 1. *Incurred Risk*

Dr. Cha argued at trial Spar was aware of the risks of the surgery, including perforation of the bowel and infection, and she therefore incurred those risks. The defense of incurred risk

> involves a mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk. By definition ... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge.

*Clark v. Wiegand,* 617 N.E.2d 916, 918 (Ind.1993) (quoting *Beckett v. Clinton Prairie Sch. Corp.,* 504 N.E.2d 552, 554 (Ind.1987)) (emphasis in original); *see also, e.g., Wallace v. Rosen,* 765 N.E.2d 192, 200 (Ind.Ct.App.2002); *Power v. Brodie,* 460 N.E.2d 1241, 1243 (Ind.Ct.App.1984). The defense "demands a subjective analysis focusing on the plaintiff's actual knowledge and appreciation of the specific risk in-

---

1. Dr. Cha offers several reasons to why Spar has waived her arguments. We conclude that

in each instance, Spar complied or substantially complied with the applicable rules.

volved and voluntary acceptance of that risk." *Get–N–Go, Inc. v. Markins,* 544 N.E.2d 484, 486 (Ind.1989), *reh'g on other grounds* 550 N.E.2d 748 (Ind.1990). We conclude as a matter of law that the incurred risk defense may not be used in the manner advocated by Dr. Cha.

### A. *Informed Consent*

▆▆ Permitting a defense of incurred risk to defeat a claim the physician failed to obtain informed consent would undermine the policy promoted by the doctrine of informed consent. Physicians have a duty to make a reasonable disclosure of material facts relevant to the decision the patient is required to make. *Auler v. Van Natta,* 686 N.E.2d 172, 174 (Ind.Ct.App. 1997), *trans. denied* 698 N.E.2d 1187 (Ind. 1998). This duty arises from the relationship between the physician and the patient and is imposed as a matter of law. *Id.; see also id.* at 176 (citing with approval a Texas decision holding the duty is non-delegable). The doctrine of informed consent is based on the patient's right to intelligently accept or reject treatment. *Id.* at 174.

Patients rely heavily on the expertise of health care providers. *Cox v. Paul,* 828 N.E.2d 907, 913 (Ind.2005). Applying the defense of incurred risk to a malpractice action premised on failure to obtain informed consent charges the patient with information a layperson is not expected to know. Therefore, it was error to permit Dr. Cha to pursue a defense of incurred risk as to Spar's claim he failed to obtain informed consent.

### B. *Negligence*

Spar also alleged Dr. Cha was negligent in treating her. Only two majority decisions from Indiana have addressed the application of incurred risk in the context of medical malpractice: *Faulk v. Northwest Radiologists, P.C.,* 751 N.E.2d 233 (Ind.Ct.

App.2001), *trans. denied* 761 N.E.2d 425 (Ind.2001), and *King v. Clark,* 709 N.E.2d 1043 (Ind.Ct.App.1999), *trans. denied* 726 N.E.2d 310 (Ind.1999). In both cases, we held the jury could be instructed on incurred risk because the patient had not followed the physician's instructions. *Faulk,* 751 N.E.2d at 243–44; *King,* 709 N.E.2d at 1048. As Dr. Cha has not alleged Spar failed to follow his instructions, these cases do not control.

However, the incurred risk defense was also discussed in Judge Sullivan's concurrence in *Smith v. Hull,* 659 N.E.2d 185 (Ind.Ct.App.1995), which we find instructive. Smith suffered from male pattern baldness and visited Dr. Hull's office several times for the purpose of obtaining hair injections. On each occasion, Dr. Hull went through detailed warnings on a consent form, which Smith signed. After a few years, Smith and Dr. Hull began discussing scalp reduction, a process in which the doctor removes skin from the patient's bald spot and then draws the remaining skin together. Dr. Hull explained that, for the best results, Smith should allow his injections to fall out and then wait an additional four to six months before beginning a series of scalp reductions. However, Smith insisted on beginning the procedure. Dr. Hull explained the risks of the procedure, including that the procedure may not be successful even if due care is exercised. Smith was displeased with the results and sued for malpractice.

Dr. Hull raised the defense of contributory negligence. We held the trial court did not err by instructing the jury on contributory negligence because the evidence supported a finding "that Smith's desire to sport a full head of hair motivated him to pursue remedies that he knowingly undertook at his own peril." *Id.* at 192.

■ Judge Sullivan suggested the case was more appropriately analyzed under the incurred risk doctrine:

> Unlike contributory negligence, which connotes a careless disregard for a risk, assumption of risk[2] connotes a voluntary assumption of a risk the nature and extent of which is fully appreciated. Smith's actions in this case, as opposed to being of a careless and unappreciating nature such as would normally be associated with contributory negligence, were certainly voluntary and motivated by his desire to stem or reverse the baldness he was experiencing.

*Id.* at 194 n. 6 (Sullivan, J., concurring) (citations omitted) (footnote added). However, Judge Sullivan noted the incurred risk doctrine should not be applied to relieve the physician of negligence in performing the procedure:

> Generally, and with good reason, courts are reluctant to apply the assumption of risk doctrine to the patient within the physician-patient relationship, on the theory that, given the inherently unequal nature of the relationship and the special knowledge and training of the physician, a patient cannot fully appreciate the risks of a given procedure, and thus cannot assume the risks of that procedure. Indeed, it is said that a plaintiff cannot assume the risk of a physician's negligence, and I agree that merely signing a consent form and having a procedure explained by the physi-

cian does not evidence a plaintiff's assumption of risk, especially with regard to whether a procedure was negligently performed.

*Id.* at 193–94 (Sullivan, J., concurring) (citations omitted).

■ We agree with Judge Sullivan and hold the defense of incurred risk may not be used to avoid negligent performance of a medical procedure.[3] We decline to extend the defense beyond the scenario in which a patient fails to follow the physician's instructions. *See Faulk,* 751 N.E.2d at 243–44; *King,* 709 N.E.2d at 1048. Therefore, the court erred by permitting Dr. Cha to pursue a defense of incurred risk.[4]

### 2. *Admission of Evidence*

■ Spar asserts the trial court erred by admitting evidence of her consent to previous surgeries. We review rulings on the admissibility of evidence for abuse of discretion. *Stowers v. Clinton Cent. Sch. Corp.,* 855 N.E.2d 739, 748 (Ind.Ct. App.2006), *trans. denied* 869 N.E.2d 454 (Ind.2007). An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court or if the court misinterprets the law. *Agilera v. State,* 862 N.E.2d 298, 302 (Ind.Ct.App.2007), *trans. denied* 869 N.E.2d 457 (Ind.2007). The party challenging the trial court's ruling must show the ruling was prejudicial. *Fitch v.*

---

**2.** Assumption of the risk and incurred risk are interchangeable terms. *See Gyuriak v. Millice,* 775 N.E.2d 391 (Ind.Ct.App.2002), *trans. denied* 792 N.E.2d 38 (Ind.2003).

**3.** Dr. Cha asserts, "This case does not involve a negligently performed surgical procedure." (Appellee's Br. at 19.) The jury returned a general verdict, and it is not clear the jury determined Dr. Cha was not negligent. Even if Dr. Cha was not negligent, the incurred risk defense would not apply. If Dr. Cha was not

negligent, he would escape liability not because Spar incurred the risk, but because he met the requisite standard of care.

**4.** Because we conclude the defense should not have been permitted, we need not address Spar's argument the jury was improperly instructed on incurred risk or that the trial court should have granted her motion for judgment on the evidence on the incurred risk defense.

*Maesch,* 690 N.E.2d 350, 352–53 (Ind.Ct. App.1998), *trans. denied* 698 N.E.2d 1195 (Ind.1998).

Relevant evidence is generally admissible. Ind. Evidence Rule 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

Dr. Cha argued the evidence was relevant to show Spar was aware of the risks of abdominal surgery and therefore incurred those risks. As discussed above, the incurred risk defense was not properly permitted in this case. Therefore, the evidence could not be admitted for that purpose.

■ In the alternative, Dr. Cha argues the evidence of consent to previous surgeries was relevant to the issue of proximate cause.

> In the context of informed consent, there must be a causal relationship between the physician's failure to inform and the injury to the plaintiff. Such causal connection arises only if it is established that had revelation been made, consent to treatment would not have been given. Thus, there is no proximate cause if the plaintiff would have submitted to the treatment even if a full disclosure had been made.

*Bowman v. Beghin,* 713 N.E.2d 913, 917 (Ind.Ct.App.1999) (citations omitted). Dr. Cha argues the consent to previous surgeries, which posed similar risks, were relevant to show Spar would have chosen to undergo this laparoscopy regardless of the information provided to her.

■ We disagree. Dr. Cha is in effect attempting to prove Spar has a propensity for risk-taking. As such, the evidence is inadmissible character evidence. Evid. R. 404(a). The relative risks and benefits of every medical procedure will be different, and the patient has a right to make an intelligent choice about each. *Auler,* 686 N.E.2d at 174. Many variables may affect a person's willingness to take risks. To permit her consent to prior surgeries to be used to negate proximate cause binds Spar to her previous decisions regarding unrelated surgeries and denies her the opportunity to make a choice based on the particular facts surrounding the laparoscopy. Therefore, we conclude the evidence should not have been admitted for either purpose advanced by Dr. Cha.

Dr. Cha argues the admission of this evidence and the instruction on incurred risk were not prejudicial. We disagree. In his closing argument, Dr. Cha specifically highlighted this evidence and argued Spar incurred the risk. We cannot say the evidence and arguments were not instrumental in the jury's decision to reject the unanimous decision of the review panel. Therefore, a new trial is appropriate.

Reversed and remanded.

CRONE, J., concurring.

DARDEN, J., dissenting with separate opinion.

DARDEN, Judge, dissenting.

I respectfully dissent with respect to the majority's conclusion that the defense of incurred risk is not available to a physician facing a claim of negligent treatment; accordingly, I would also hold that evidence of Spar's consent to previous surgeries was relevant to such a defense and, therefore, admissible.

In discussing the general doctrine of incurred risk, I would not focus on the concept of "venturousness," inasmuch as the cases cited are distinguishable by involving injuries suffered during the course of activities such as a judo class or a baseball game. *See Clark v. Wiegand,* 617 N.E.2d 916 (Ind.1993); *Beckett v. Clinton Prairie Sch. Corp.,* 504 N.E.2d 552 (Ind. 1987). That said, I nevertheless fully agree with the notion that the defense of incurred risk "demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk," and that "the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances." *Clark,* 617 N.E.2d at 918; *Beckett,* 504 N.E.2d at 554. Further, I agree that incurred risk

> requires much more than the general acceptance of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge.

*Id.* (emphasis in original).

These statements of law lead me to conclude that the defense of incurred risk is a question of fact to be decided by the finder of fact, *i.e.,* that the jury conducts the "subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk." *Id.* Therefore, I part ways with the majority's conclusion that other than the scenario in which a patient fails to follow the physician's instructions, the defense of incurred risk is not available in a claim of negligent treatment.

Certainly the case before us contains a series of unusual facts—Spar's initial medical treatments in 1986, subsequent medical procedures, and the medical history in that regard—that preceded the treatment which she alleges Dr. Cha negligently pro-

vided. I believe that here, Dr. Cha was properly permitted to argue to the jury that it should consider the evidence indicating that Spar knowingly incurred the risk of experiencing the injury that she did, unfortunately, suffer in the course of that treatment.

Finally, I find that the trial essentially presented a battle-of-the-experts as to whether Dr. Cha's treatment of Spar met the applicable standard of care based upon the facts in this case.[5] The jury's general verdict may be seen to have found most credible those experts testifying that Dr. Cha's treatment met that standard of care, and to manifest their conclusion that he was not negligent. Therefore, I would affirm.

---

5. Further, because I find that the facts allowed Dr. Cha to argue an incurred risk defense, I would also find that the trial court properly instructed the jury in that regard.